# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

GEORGE GOMEZ,
          Plaintiff,

v.                                                                   Case No. 17-C-1099

MILWAUKEE AREA TECHNICAL COLLEGE,
          Defendant.

## DECISION AND ORDER

George Gomez claims that Milwaukee Area Technical College ("MATC") did not hire him as one of its full-time Barber/Cosmetology instructors because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"). Before me now is MATC's motion for summary judgment. *See* Fed. R. Civ. P. 56.

## I. BACKGROUND

MATC is a two-year technical college in Milwaukee. Its School of Business offers a Barber/Cosmetology program. As the name implies, the program prepares students to become barbers and/or cosmetologists. Instructors in the program are either full-time or part-time.

In 2002, MATC hired George Gomez as a part-time instructor in the program. He remains in that position today. In 2014, Gomez applied to become a full-time instructor but was not selected for the position. In May 2016, when he was 59 years old, Gomez again applied to become a full-time instructor and again was not selected for the position. Gomez alleges that MATC's failure to hire him for the 2016 vacancy violated the ADEA.

MATC used a multi-step process to fill the 2016 position. Each step was performed by a hiring committee with assistance from MATC's Human Resources Department. The first step in the process was an application review, in which committee members evaluated the candidates' written applications against the qualifications listed in the job description and gave each candidate a score. The highest-scoring applicants were invited to campus for the first of potentially two interviews. However, certain internal candidates, such as Gomez, were guaranteed a first interview.

After the committee identified the candidates to invite for a first-round interview, MATC conducted a "certification review" to ensure that the selected candidates held the required credentials for the position. Def. Proposed Findings of Fact ("PFOF") ¶ 53. Only the candidates who passed the certification review were invited for interviews.

Six candidates passed the application and certification reviews and were invited for first-round interviews: Gomez (age 59), Celena Williams (age 38), Victor Zarate (age 32), Megan Jackson (40s[1]), Torrie Grade (age 44), and Amy Lopez (age 52). In the first-round interviews, the committee—which consisted of three MATC employees, Brian Carlson (age 35), Jonathan Feld (age 35), and Shari Tuska (age 56)—asked the candidates 10 questions that had been preapproved by Human Resources. The same 10 questions were posed to each candidate, and Human Resources instructed the committee members to "stick to the script" and ask each candidate the same questions using the same words in the same order. Def. PFOF ¶ 60. Each committee member

---

[1] The plaintiff contends that one committee member thought that Jackson was in her 40s. In response, MATC filed a declaration stating that Jackson was born in 1981, making her 35 at the time of the interview. The difference in the parties' views of Jackson's age is not material to summary judgment, but for purposes of summary judgment I will assume that Jackson was in her 40s.

2

evaluated the candidate's response to each question using a three-point scale, with one being the lowest and three being the highest. In addition to the 10 questions, each first-round interview included a teaching demonstration. The candidates were asked to "demonstrate the practical application of a tint-retouch." Def. PFOF ¶ 56. The committee members rated each candidate's demonstration in three categories, again using a three-point scale.

The candidates with the three highest first-round interview scores were invited back for second interviews. These candidates were Grade, Lopez, and Zarate. Gomez scored the lowest of the six first-round interviewees and thus did not receive a second interview. He was excluded from further consideration for the position at that point.

The committee members' evaluation forms reflect that Gomez did not do well during the interview and demonstration. Carlson noted on his evaluation form for Gomez that Gomez "often didn't answer questions." ECF No. 30-2 at 5. Feld also noted on his form that Gomez "didn't answer" a question, ECF No. 30-8 at 2, and that he "didn't give a solid example" in response to another question, *id.* All three committee members thought that Gomez's teaching demonstration was poor. Carlson and Tuska gave Gomez the lowest possible score for his demonstration (3 out of 9), and Feld gave him only one point above the lowest (4 out of 9). The comments that the committee members wrote on their evaluation forms indicate that they thought Gomez's presentation was disorganized and that he was not well prepared. ECF No. 30-2 at 4; ECF No. 30-4 at 20; ECF No. 30-8 at 4.

The second-round interviews were conducted by a committee consisting of two MATC employees, Brian Carlson (who was also on the first-round committee) and

3

Richard Busalacchi (who was not). As in the first-round interviews, the committee members asked the second-round candidates questions that were preapproved by Human Resources and rated the candidates' answers on a three-point scale. Zarate received the highest score of the three candidates who were invited for second-round interviews, but only by a single point. His second-round interview score was 43, while the score of another candidate, Grade, was 42. However, Zarate was an existing part-time instructor at MATC, while Grade had no prior MATC experience. According to Carlson, the committee recommended to Human Resources that Zarate be hired for the position because he had the highest second-round interview score and because the committee believed that his prior MATC experience would "likely provide him with additional points." Carlson Dep. at 136:25–137:6.

Although Zarate received a higher score than Grade and Lopez for his second-round interview, he did not receive the highest overall score, which human resources calculated after the committee recommended Zarate for the position. The overall score for each candidate consisted of the total points the candidate received during the whole interview process—the written application and two interviews—combined with a score that reflected any prior MATC experience the candidate had. Zarate's overall score was 64.79, but Grade's overall score was 64.80, a hundredth of a point higher. MATC states that because the committee recommended Zarate for the position and his overall score was only a hundredth of a point lower than the highest-scoring candidate, it deferred to the committee's recommendation and offered the position to Zarate. Decl. of Laura Domres ¶ 3.

4

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

The ADEA protects workers 40 and older from age-based employment discrimination. As is relevant here, the ADEA prohibits employers from "fail[ing] or refus[ing] to hire . . . any individual . . . because of [his or her] age." 29 U.S.C. § 623(a)(1). To prevail, a plaintiff must prove by a preponderance of the evidence that, but for his age, the employer would have hired him for the position. *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018).

Gomez may carry his burden by presenting direct or circumstantial evidence of age discrimination. *Id.* Alternatively, he may proceed under the *McDonnell Douglas* burden-shifting approach by producing evidence that a similarly situated person not in the protected class was treated more favorably. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If he does so, the burden shifts to MATC to articulate a legitimate, nondiscriminatory reason for the challenged action. *Id.* If MATC articulates such a reason, then Gomez has the burden to show that the stated reason is a pretext for discrimination. *Id.* Regardless of how the plaintiff chooses to proceed, the basic question at the summary-judgment stage is whether the evidence as a whole would

allow a reasonable jury to find that the plaintiff suffered an adverse job action because of his age. *Id.* (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

Gomez has presented no direct evidence of age discrimination and proceeds entirely under the burden-shifting method, noting that MATC ultimately hired Zarate—who was 32 and the youngest of the interviewed candidates—for the position. Initially, MATC contends that Gomez cannot establish a *prima facie* case under the burden-shifting method because he has not shown that he was "qualified" for the position and that Zarate had "similar or lesser qualifications" than him. *See Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 444 (7th Cir. 2014) (identifying elements of *prima facie* case). However, in arguing that Gomez was not qualified and that he was less qualified than Zarate, MATC focuses on Gomez's poor first-round interview performance. But interview performance is not really a qualification for a position. "Qualification" usually means things like degrees, licenses, and minimum years of experience. *See Warren v. Solo Cup Co.*, 516 F.3d 627, 631 (7th Cir. 2008). MATC does not contend that Gomez lacked any qualifications such as those. Thus, I conclude that Gomez has shown that he was qualified for the position and that his qualifications were similar to Zarate's. In any event, the only purpose of the *prima facie* case is to shift the burden to the defendant to offer a legitimate, non-discriminatory reason for the challenged action. *See, e.g., Malacara v. City of Madison*, 224 F.3d 727, 729 (7th Cir. 2000) ("Where the defendant has met its burden [to articulate a non-discriminatory reason], it is irrelevant whether a *prima facie* case has been made."). Here, MATC offers such a reason—namely, Gomez's poor first-round interview performance—and thus to survive summary judgment the plaintiff must show that this reason is a pretext for age discrimination.

Generally, there are two ways Gomez could show that MATC's articulated reason is pretextual. One way would be to show that MATC did not actually use first-round interview scores as the sole basis for determining who would advance to the second round of interviews. Alternatively, Gomez could show that, although MATC used the scores to determine who would advance to the second round, the scores themselves were the product of age discrimination. Under this alternative, Gomez would have to point to suspicious circumstances suggesting that the committee members scored the candidates based on their ages rather than on how they performed during their interviews.

I do not understand Gomez to contend that MATC is lying when it says that it used the first-round interview scores to determine who would advance to the second round of interviews. In any event, there is no evidence in the record suggesting that MATC did not base its decision on the interview scores. It is undisputed that the three candidates who received second interviews were the three candidates who had the highest first-round scores, and the plaintiff points to no suspicious circumstances from which the jury could infer that this was a coincidence rather than the reason for MATC's decision.

Instead, Gomez contends that the committee members gave him low scores because of his age. In this regard, he notes that the scoring criteria called for the committee members to make subjective judgments about his performance and thus provided an opportunity for the committee members to hide any ageist sentiments that may have played a role in their decisionmaking. It is true that the scoring criteria called for subjective judgments. But this by itself cannot lead to a finding of pretext. The

7

plaintiff must also point to evidence from which the jury could infer that the committee members' scores were not based on their honest assessments of the plaintiff's performance. In other words, the plaintiff must point to evidence suggesting that the committee members were biased against him because of his age and that they used the subjective interview criteria to mask their discrimination. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002) ("[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII" (internal quotation marks and citation omitted)).

In the present case, no evidence suggests that the committee members used the subjective criteria as a mask for discrimination. Gomez contends that the jury could infer pretext because the committee members' scores were "erratic," by which he means that some committee members scored some of the same candidates differently. Br. in Opp. at 18. However, I fail to see how the committee members' having different views of the same candidates suggests that they used the interview criteria to mask discrimination. Indeed, MATC probably uses a hiring committee rather than a single interviewer precisely because it wants to obtain a variety of opinions about each candidate. Thus, the fact that committee members gave different scores to the same candidates is unremarkable.

Next, Gomez contends that "committee members deviated from their expectations to award the younger candidates—generally Williams, Grade, and Zarate—higher scores." Br. in Opp. at 20. However, this argument is not supported by the record. Williams came in fourth and thus was not offered a second-round interview.

8

Lopez, who, at age 52, was the oldest candidate after Gomez, received a higher score than Williams. Moreover, the youngest candidate, Zarate, scored lower than Lopez during the first-round interview. Thus, it is simply not the case that the committee members awarded higher scores to the younger candidates.

Gomez also attempts to show pretext by citing to his own assessment of his performance during the interview and demonstration. As discussed above, all three committee members wrote in their evaluations that Gomez's teaching demonstration was disorganized and/or that he did not seem prepared. Gomez argues that these assessments are wrong, citing his own testimony in which he explains that he practiced his demonstration ahead of time and prepared a handout and PowerPoint demonstration. Gomez Decl. ¶¶ 9–13. However, Gomez's perception of his own performance cannot establish pretext. *See Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 621–22 (7th Cir. 2001); *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464–65 (7th Cir. 1986). Instead, to establish pretext, Gomez must present evidence that the committee members did not *believe* their own assessments of his performance. *Schaffner*, 256 F.3d at 622. Nothing in Gomez's declaration suggests that the committee members did not honestly believe what they wrote in their evaluations.

Gomez also notes that Lopez, the oldest candidate who made it to the second round of interviews, received the lowest score during that round. He suggests that this can be viewed as evidence that the committee members used the scoring criteria to "weed out" the oldest candidate in each round. Br. in Opp. at 13. However, the mere fact that the oldest candidate in each round received the lowest score does not suggest that the committee members used the scores to mask age discrimination. Although the

plaintiff attempts to show more, his arguments are unconvincing. First, he notes that Carlson said that Lopez did not seem prepared for her second-round interview and that she did not answer portions of many of the questions—two of the same criticisms he had of Gomez during the first round. Gomez seems to imply that Carlson uses these criticisms whenever he actually thinks that the candidate is too old. But Gomez points to no evidence suggesting that Carlson harbored ageist sentiments and thus had a motive to use his criticisms as a mask for discrimination. Accordingly, the jury would have no basis for finding that Carlson did not actually believe that Lopez did not seem prepared for her interview or that she did not answer some of the questions.

Second, Gomez notes that the questions asked during the second round were the same as the first, yet Lopez's scores were lower in the second round than in the first. Gomez seems to imply that because the questions were the same in each round, the candidates' scores should have been the same in each round. However, some of the committee members were different in each round—Tuska and Feld participated only in the first round and a different faculty member, Busalacchi, participated only in the second round—and thus each round of interviews resulted in different subjective impressions. Moreover, the same candidate might perform better or worse in the second interview than he or she did in the first. Thus, Lopez's receiving lower scores in the second round does not suggest that the committee members were scoring based on age rather than on their honest assessment of each candidate's performance.

Gomez also notes that none of the nine full-time faculty members in the Barber/Cosmetology program as of 2016 were older than 52 at the time they were hired. Although Gomez does not explain why he thinks this is evidence of pretext, I assume he

is implying that it shows that those who make the hiring decisions for the department are biased against older candidates. But of course the mere fact that no full-time faculty member was over 52 at the time of he or she was hired does not give rise to an inference that decisionmakers within the department are biased against older candidates. Gomez does not identify the ages of the other candidates who applied for the positions that MATC eventually awarded to its nine full-time faculty members. For all the record shows, it may be the case that no one over the age of 52 applied for any of the positions (except for the 2014 vacancy Gomez applied for). Moreover, two of the nine full-time instructors were 52 at the time of their hire. Pl. PFOF ¶ 130. This is fairly strong evidence of the *absence* of age-related bias among those who make the hiring decisions for the department. Thus, the ages of the current faculty members at the time of their respective hires is not evidence of pretext.

Finally, Gomez argues that MATC failed to evaluate his written application in the same manner in which it evaluated the other candidates'. Initially, I note that Gomez made it past the application-review stage and thus did not suffer an adverse employment action from any discrimination that occurred at that stage. However, I will assume that if discrimination occurred at the application-review stage, then the jury could reasonably infer that discrimination also occurred during the first-round interviews, which did result in Gomez's being excluded from further consideration for the full-time position.

First, Gomez contends that Zarate, the youngest candidate, received favorable treatment during the application review because he was allowed to interview for the position even though his state licenses were expired and thus he did not possess the

position's minimum qualifications. As support for his claim that Zarate's licenses were expired, Gomez cites a document in the record showing that Zarate's licenses expired in March 2015. ECF No. 39-1 at 79. Gomez does not explain what this document is, but it looks like Zarate's resume or his written application for the position. MATC contends that Zarate's licenses were not expired. It submits a declaration from the employee who performed Zarate's certification review in 2016. This employee states that Zarate's licenses were not expired in July 2016, which is when she conducted the certification review. She attaches copies of the licenses to her declaration, which show that they would not expire until March 2017. *See* Decl. of Jennifer Smith, ECF No. 48. Thus, it appears that the document cited by Gomez is inaccurate or that Zarate renewed his licenses between the time Gomez's document was created and the time of the certification review. In any event, MATC's granting Zarate an interview while thinking his licenses had expired would not, by itself, suggest that MATC was biased in favor of younger workers. Therefore, even if Gomez's evidence creates a factual dispute over whether Zarate's licenses were expired when MATC granted him an interview, that dispute would not defeat MATC's motion for summary judgment.

Second, Gomez contends that MATC did not credit him with being bilingual during the application review even though it gave two other candidates (Lopez and Zarate) credit for being bilingual. However, MATC wrote "bilingual" on Gomez's forms, ECF No. 43 at 24; ECF No. 36-3 at 6, and Gomez has not cited to anything in the record indicating that MATC did not give him the same credit for being bilingual as it gave to other candidates. Thus, Gomez's contention that he was not given credit for being bilingual is not supported by the record.

In short, the evidence as a whole would not allow a reasonable jury to find that MATC did not hire Gomez to the full-time faculty because of his age. Therefore, MATC's motion for summary judgment will be granted.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that MATC's motion for summary judgment is **GRANTED**. The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 1st day of May, 2019.

    s/Lynn Adelman
    LYNN ADELMAN
    District Judge